**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

| | |
|---|---|
| RAY ANTHONY KNIGHTON )<br>*Plaintiff*, )<br> )<br>v. )<br> )<br>AMY HARTMAN, et al., )<br>*Defendants*. ) | 3:21-cv-765 (KAD)<br><br><br><br><br>DECEMBER 4, 2023 |

**MEMORANDUM OF DECISION
RE: DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT (ECF NO. 46, 49)**

Kari A. Dooley, United States District Judge:

The plaintiff, Ray Anthony Knighton ("Knighton" or "Plaintiff"), filed this civil rights action pursuant to 42 U.S.C. § 1983 against multiple defendants, including the Willimantic Police Department (WPD), individual WPD members, and members of the Connecticut Department of Corrections (DOC) medical services staff. The Complaint arises out of Knighton's interaction with WPD officers on November 3, 2018. Following initial review, *see* 28 U.S.C. § 1915A(b), the court, Covello, U.S.D.J., allowed claims to proceed against three defendants, WPD Corporal Amy Hartman, Sergeant Joshua Clark, and Officer Nicholas Sullivan (together, "the Defendants"), in their individual capacities only. The claims that survived initial review are the Fourth Amendment claims for use of excessive force against Officer Sullivan and Sergeant Clark, the Fourth Amendment claim for failure to intervene/deliberate indifference to safety against Corporal Hartman, and the state and federal constitutional equal protection claims and state tort claims for assault and battery and intentional infliction of emotional distress against all three Defendants. *See* Initial Review Order, ECF No. 11 at 26–27.

The Defendants have filed motions for summary judgment.[1] Plaintiff opposes the motions. *See* Pl. Resp., ECF No. 59. For the following reasons, the motions for summary judgment are GRANTED in part and DENIED in part.

**Standard of Review**

A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(a), Fed. R. Civ. P.; *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.,* 875 F.3d 107, 113-14 (2d Cir. 2017). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage*, 875 F.3d at 113-14 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Which facts are material is determined by the substantive law. *Anderson*, 477 U.S. at 248. "The same standard applies whether summary judgment is granted on the merits or on an affirmative defense …." *Giordano v. Mkt. Am., Inc*., 599 F.3d 87, 93 (2d Cir. 2010).

In considering a motion for summary judgment, a court "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Kee v. City of New York*, 12 F.4th 150, 158 (2d Cir. 2021) (citation and internal quotation marks omitted). Where accounts differ, "[a]ssessments

---

[1] The Defendants filed an initial motion for summary judgment, ECF No. 46, which relied in part on an affidavit from Corporal Hartman, ECF No. 46-3. However, due to counsel's inability to contact Corporal Hartman, her affidavit in that initial motion was unsigned. *See* Def.'s Mot. for Summ. J., ECF No. 46 at 2, n. 1. Defendants then filed a motion for permission to supplement their motion for summary judgment with a signed affidavit from Corporal Hartman. *See* ECF No. 47. The Court granted that motion, noting that "Defendants may submit a signed affidavit of Corporal Hartman." ECF No. 48. However, Defendants were unable to obtain the signed affidavit, and instead filed a supplemental motion for summary judgment. *See* Def.'s Suppl. Mot. for Summ. J., ECF No. 49 at 1–2. The supplemental motion for summary judgment eliminates all references to defendant Hartman's affidavit but asserts the same grounds for relief as the original motion. *Id*. It includes a memorandum of law (ECF No. 49-1) and revised Local Rule 56(a)(1) statement of undisputed material facts (ECF No. 49-2). However, it does not include any of the exhibits appended to the initial motion for summary judgment (ECF Nos. 46-3 to 46-9). Because the supplemental motion for summary judgment maintains citations to those exhibits, the Court reads the supplemental motion for summary judgment at ECF No. 49 as the operative motion, but refers to the exhibits appended to the initial motion for summary judgment at ECF No. 46 when cited by Defendants.

of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Adamson v. Miller*, 808 F. App'x 14, 16 (2d Cir. 2020) (summary order) (internal quotation marks omitted). "Corroboration, though helpful, is not essential; 'a § 1983 plaintiff's testimony alone may be independently sufficient to raise a genuine issue of material fact.'" *Id.* (quoting *Bellamy v. City of New York*, 914 F.3d 727, 746 (2d Cir. 2019)).

The moving party bears the initial burden of informing the court of the basis for its motion and identifying the admissible evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must set forth "specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). He cannot "rely on conclusory allegations or unsubstantiated speculation[.]" *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 44 (2d Cir. 2015) (quotation marks and citation omitted). To defeat a motion for summary judgment, the nonmoving party must present such evidence as would allow a jury to find in his favor. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

Although the court is required to read a self-represented party's "papers liberally to raise the strongest arguments that they suggest," *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015) (quotation marks and citation omitted), "unsupported allegations do not create a material issue of fact" and do not overcome a properly supported motion for summary judgment. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

However, the failure to oppose summary judgment, standing alone, is insufficient cause to grant the motion. The court "must still assess whether the moving party has fulfilled its burden

3

of demonstrating that there is no genuine issue of material fact." *Vermont Teddy Bear Co. v. 1-800-BEARGRAM Co.*, 373 F.3d 241, 244 (2d Cir. 2004). "Where a non-movant fails to adequately oppose a properly supported factual assertion made in a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute, even if that non-movant is proceeding *pro se*." *Jackson v. Onondaga Cnty.*, 549 F. Supp. 2d 204, 209 (N.D.N.Y. 2008) (footnotes omitted). However, the court is not precluded from doing so.

When the complaint is verified, it may be treated as an affidavit for summary judgment purposes only insofar as the statements are not conclusory and were made on personal knowledge. *Curtis v. Cenlar FSB*, 654 F. App'x 17, 20 (2d Cir. 2016) (citing *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)). Even nonconclusory statements in a verified complaint, however, "may be insufficient to create a factual issue where [they are] (1) 'largely unsubstantiated by any other direct evidence' and (2) 'so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of belief necessary to credit the allegations made in the complaint.'" *Jackson*, 549 F. Supp. 2d at 210 (citation omitted).

**Facts and Procedural History**[2]

---

[2] The facts are taken from the defendants' Local Rule 56(a) Statements and supporting exhibits. Local Rule 56(a)2 requires the party opposing summary judgment to submit a Local Rule 56(a)2 Statement which contains separately numbered paragraphs corresponding to the Local Rule 56(a)1 Statement and indicating whether the opposing party admits or denies the facts set forth by the moving party. Each denial must include a specific citation to an affidavit or other admissible evidence. D. Conn. L. Civ. R. 56(a)3.
The defendants informed Knighton of this requirement. *See* Notice of Service to Self-Represented Litigant Concerning Motion for Summary Judgment, ECF No. 51. Despite this notice, Knighton has not included a Local Rule 56(a)2 Statement with his opposition to the defendants' motions. The fact that Knighton is unrepresented does not excuse him from complying with the court's procedural and substantive rules. *See Evans v. Kirkpatrick*, No. 08-CV-6358T, 2013 WL 638735, at *1 (W.D.N.Y. Feb. 20, 2023) (citing *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006)); *see also Jackson v. Onodaga Cnty.*, 549 F. Supp. 2d 204. 214 (N.D.N.Y. 2008) ("when a plaintiff is proceeding pro se, 'all normal rules of pleading are not absolutely suspended'") (citation omitted). Thus, the defendants' facts, when supported by the evidence of record, are deemed admitted. *See* D. Conn. L. Civ. R. 56(a)3 ("Failure to provide specific citations to evidence in the record as required by this Local Rule may

In the morning of November 3, 2018, Knighton was arrested by the Defendants, all members of the Willimantic Police Department. Defs.' Rule 56(a) Stmt., ECF No. 49-2, ¶ 1. While on patrol in the early morning hours of November 3, 2018, defendants Hartman and Clark were dispatched, with other officers, to respond to a security alarm at the A-1 Gas Station on West Main Street in Willimantic. *Id.* ¶¶ 2–3. Sergeant Clark arrived before Corporal Hartman. *Id.* ¶ 4. Officers arriving at the scene observed that the front glass door was smashed and heard a security alarm. *Id.* ¶ 5.

The owner showed defendants Clark and Hartman surveillance footage which depicted a black male carrying a multi-colored backpack and duffle bag stealing several items from the store and then fleeing through the front door. *Id.* ¶ 6. The man on the surveillance footage was later identified as Knighton. *Id.* ¶ 7. Corporal Hartman used her personal cell phone to distribute still photographs taken from the surveillance footage to other police officers. *Id.* ¶ 8.

After burglarizing the A-1 Gas Station and fleeing on foot before the police arrived, Knighton attempted to break into eleven different vehicles located in the Capital Garage, also on West Main Street in Willimantic, using screwdrivers and a hammer that were later found following his arrest.[3] *Id.* ¶ 9.

Several hours after the officers responded to the alarm, Officer Sullivan was patrolling the area of West Main Street in his police vehicle as part of his regular duties. *Id.* ¶ 10. Sergeant Clark was patrolling the same area. *Id.* ¶ 11. It was raining heavily. *Id.* ¶ 12. Sergeant Clark saw

---

result in the Court deeming admitted certain facts that are supported by the evidence in accordance with Local Rule 56(a)1, or in the Court imposing sanctions....").

[3] The defendants state in their Rule 56(a)1 Statement that both the screwdrivers and hammer were found on Knighton's person. The evidence of record indicates that two screwdrivers were found in his waistband and that other screwdrivers and the hammer were found at police headquarters when the contents of the backpack and dufflebag were inventoried. *See* Case Incident Report, Defs.' Mem. Ex. A1, ECF No. 46-4 at 6. The backpack and dufflebag were not near Knighton when he was finally apprehended.

a person matching Knighton's description walking on West Main Street. *Id*. ¶ 13. Sergeant Clark positively identified Knighton and radioed other officers to respond to the area. *Id*. ¶ 14.

Officer Sullivan responded to the area and located Knighton talking to the attendant at the Stop and Shop Gas Station. *Id*. ¶ 15. Officer Sullivan tried to take Knighton into custody and Sergeant Clark arrived while Officer Sullivan was doing so. *Id*. ¶ 16. Knighton did not cooperate with the officers. He became agitated and began to physically resist by evading Officer Sullivan and pulling his arms and hands away when Officer Sullivan tried to grab him. *Id*. ¶ 17. Officer Sullivan and Sergeant Clark managed to secure a handcuff on Knighton's left wrist, but Knighton broke free. *Id*. ¶ 18. Officer Sullivan and Sergeant Clark then brought Knighton to the ground. *Id*. Once on the ground, Knighton got free and continued to resist arrest and attempt to flee. *Id*. ¶ 19.

In light of Knighton's continued refusal to comply with commands and the attempts to arrest him, Officer Sullivan issued a warning and then deployed his taser. *Id*. ¶ 20. The taser made contact with Knighton but had no observable effect. *Id*.

Knighton began to run from the scene with the handcuff dangling from his wrist. *Id*. ¶ 21. He ran across the street into the Old Willimantic Cemetery. *Id*. Officer Sullivan and Sergeant Clark chased Knighton on foot. *Id*. ¶ 22. Officer Sullivan caught up to Knighton first and wrestled him to the ground. *Id*. ¶ 23. Sergeant Clark arrived and assisted Officer Sullivan. *Id*. ¶ 24.

At one point, Knighton briefly placed Sergeant Clark in a headlock and elbowed him in the face as Knighton was trying to break free. *Id*. ¶ 25. During the struggle, Knighton tried to reach toward his waistband. *Id*. ¶ 26. Officer Sullivan and Sergeant Clark thought Knighton may have been reaching for a weapon. *Id*. Sergeant Clark provided a warning and deployed his taser,

striking Knighton with no effect. *Id*. ¶ 27. He deployed a second taser cartridge again with no effect on Knighton. *Id*.

The officers suspected that Knighton may have been under the influence of narcotics because he displayed great strength and endurance during the foot chase and subsequent struggle and because he had been tased three times with no effect. *Id*. ¶ 28. Knighton continued to physically resist arrest. *Id*. ¶ 29.

To apprehend Knighton, Sergeant Clark and Officer Sullivan each delivered two non-consecutive close-fisted strikes to Knighton's face and torso, ordering Knighton to stop resisting between strikes. *Id*. ¶ 30. Immediately thereafter, Knighton put his hands behind his back and indicated he would no longer resist. *Id*. ¶ 31. Sergeant Clark then handcuffed Knighton. *Id*.

Knighton offers a different description of his apprehension in his verified complaint. Knighton states that Officer Sullivan issued no orders to him before grabbing Knighton's wrist. Compl., ECF No. 1, ¶ 24. Officer Sullivan then said, "you know what the f--- this is," shoved Knighton over the hood of his police vehicle, and slammed him to the ground. *Id*. ¶¶ 24–26. Knighton struggled and wriggled away, but did not strike, kick, push, or shove Officer Sullivan. *Id*. ¶¶ 31–32.

Knighton was standing in the cemetery, trying to catch his breath, when Officer Sullivan tackled him from behind and forced him to the ground. *Id*. ¶¶ 35–36. Officer Sullivan straddled Knighton's back and forced his face into a puddle. *Id*. ¶¶ 36, 38. Knighton arched his shoulders and used his outstretched arms as leverage to keep his face out of the puddle so he could breathe, but Officer Sullivan continued to try to push his face down. *Id*. ¶ 39.

Sergeant Clark arrived a few seconds later and began kicking Knighton in the left side. *Id*. ¶ 40. Officer Sullivan applied hand strikes to Knighton's right cheek and forehead while

ordering Knighton to put his hands behind his back. *Id*. ¶ 41. Knighton continued to brace himself to keep his face out of the puddle so he could breathe. *Id*. ¶ 42. Sergeant Clark kicked Knighton about his body and stomped repeatedly on Knighton's right hand while ordering him to put his hands behind his back. *Id*. ¶ 43. Corporal Hartman arrived on the scene about the same time as Sergeant Clark and merely watched the use of force, appearing to act as a lookout. *Id*. ¶ 44. Knighton also alleges that at this point, Corporal Hartman told him "you must be one dumb [n-word], to get caught with the merchandise after breaking into a business." *Id*.

Knighton was provided medical treatment at the scene to remove the taser barbs and treat lacerations on his face. Defs.' Rule 56(a) Stmt., ECF No. 49-2, ¶ 34. Knighton was then taken to Windham Hospital for medical treatment which is standard procedure whenever force is used and a taser is deployed. *Id*. ¶ 35. He was discharged and remanded to police custody. *Id*.

Knighton admitted that he had used PCP and consumed large quantities of alcohol during the early morning hours of November 3, 2018. *Id*. ¶ 36.[4] He was charged with burglary in the third degree, criminal mischief in the second degree, larceny in the fourth degree, possession of burglary tools, interfering with an officer, assault on a police officer, criminal impersonation, and forgery in the third degree. *Id*. ¶ 37. Knighton was convicted of burglary in the third degree and assault on a public safety officer. *Id*. ¶ 38.

**Discussion**

The remaining federal claims are the Fourth Amendment claims for use of excessive force against Officer Sullivan and Sergeant Clark, the Fourth Amendment claim for failure to intervene against Corporal Hartman, and the equal protection claim against all three Defendants.

---

[4] In his Response to Defendant's Motion for Summary Judgment, ECF No. 59, plaintiff specifically denies using any drugs, or consuming any alcohol within six hours of the incident in question. Pl.['s] Reply to Defs. ['] Mot. Summ. J., ECF No. 59, at 5. However, as noted above, Plaintiff did not provide a Local Rule 56(a)(2) statement or cite to any affidavits or evidence to support his denial.

The Court also exercised supplemental jurisdiction over the state law claims for denial of equal protection of the laws, assault and battery, and intentional infliction of emotional distress as those claims relate to defendants Sullivan, Clark, and Hartman. Defendants move for summary judgment on the grounds that Plaintiff's federal claims fail as a matter of law, they are protected by qualified immunity, and Plaintiff's state tort claims also fail as a matter of law. Defendants do not specifically address Knighton's state law equal protection claim.

### Fourth Amendment

Plaintiff asserts two Fourth Amendment claims, that Officer Sullivan and Sergeant Clark used excessive force in effecting his arrest and that Corporal Hartman failed to intervene to prevent the use of excessive force.

#### Excessive Force

Plaintiff's claim that excessive force was used against him in the course of his arrest is cognizable under the Fourth Amendment. *See Jones v. Treubig,* 963 F.3d 214, 225 (2d Cir. 2020) (explaining that the use of significant force against an arrestee who is no longer resisting and poses no threat to the safety of officers or others is a Fourth Amendment violation) (citing *Tracy v. Freshwater*, 623 F.3d 90, 98-99 (2d Cir. 2010)). To prevail on his excessive force claim, Plaintiff must show that the amount of force used was objectively unreasonable either as to when or how the force was applied, and that, as a result of the use of force, he suffered some compensable injury. *See Graham v. Connor*, 490 U.S. 386, 396 (1989). Whether the force used is excessive depends on "the facts and circumstances of each particular case." *Id.* The Court considers "the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* "The 'reasonableness' of a particular use of force must be judged

from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight" and needs to allow "for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97. The force used must be more that *de minimis*. *See Durr v. Slator*, 558 F. Supp. 3d 1, 16 (N.D.N.Y. 2021) (citing *Feliciano v. Thomann*, 747 F. App'x 885, 887 (2d Cir. 2019)).

Plaintiff alleges that the initial use of force, including being grabbed, shoved over the hood of a police vehicle, and then slammed to the ground, was unprovoked and not accompanied by any statement that he was being arrested. Defendants contend that the use of a taser was necessary when Plaintiff resisted arrest. Plaintiff concedes that he wriggled free from officers and fled into the cemetery following the initial attempt at arrest. However, once in the cemetery, he further alleges that he was standing, catching his breath, when Officer Sullivan tackled him to the ground and forced his face into a puddle. Although Plaintiff admitted that he did not comply with the orders to put his hands behind his back to be handcuffed, he states that he could not do so and continue to be able to breathe.

Plaintiff's statements in his verified complaint create issues of material fact sufficient to defeat Defendants' motion for summary judgment. For their account of the incident, Defendants' rely on affidavits and police reports, while Plaintiff relies on his verified complaint. Neither side provided documentary evidence or affidavits or statements from uninterested parties. Therefore, in order to determine whether Knighton was told he was under arrest, whether he was continuing to attempt to evade arrest or just trying to breathe, and whether the amount of force Officer Sullivan and Sergeant Clark used was objectively reasonable, the Court would have to assess credibility and choose between conflicting versions of the events at issue. This, the Court may

10

not do as these determinations are necessarily for the jury. *Adamson*, 808 F. App'x at 16. The Defendants' motion for summary judgment on the ground that Plaintiff's excessive force claim fails as a matter of law is therefore denied.

### Failure to Intervene

Plaintiff contends that Corporal Hartman failed to intervene to protect him from harm. "A police officer is under a duty to intercede and prevent fellow officers from subjecting a citizen to excessive force, and may be held liable for his failure to do so if he observes the use of force and has sufficient time to prevent it." *Figueroa v. Mazza*, 825 F.3d 89, 106 (2d Cir. 2016) (internal citation omitted). The theory underlying the claim is that, by failing to intervene, the officer becomes a "tacit collaborator" in the illegal conduct. *Id*. Thus, for Plaintiff to succeed on this claim, he must present evidence showing that Corporal Hartman had "a realistic opportunity to intervene to prevent the harm from occurring." *Felix v. City of New York*, 408 F. Supp. 3d 304, 312 (S.D.N.Y. 2019) (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)). In assessing whether an officer had a realistic opportunity to prevent the use of force, the Court considers both the duration of the use of excessive force and the officer's presence and proximity, as she must have had sufficient time to act. *See Merrill v. Schell*, 279 F. Supp. 3d 438, 445 (W.D.N.Y. 2017) (officer must observe the use of force and have sufficient time to act).

The Defendants cite Corporal Hartman's incident report to support their statement that Corporal Hartman did not arrive on the scene at the cemetery until after Knighton was handcuffed. The incident report, however, contains no such statement. See Defs.' Mem. Ex. A1, ECF No. 46-4. Sergeant Clark states in his affidavit that other officers did not arrive on the scene until they were placing Knighton in handcuffs. Clark Aff., Defs.' Mem. Ex. B, ECF No. 46-5 ¶ 36. Plaintiff alleges in his verified complaint, however, that Corporal Hartman arrived seconds

11

after Sergeant Clark. If Plaintiff is correct, a jury might conclude that Corporal Hartman had time to observe the excessive use of force and intercede on Plaintiff's behalf. The Court cannot resolve these factual disputes on summary judgment. Therefore, the Defendants' motion for summary judgment on the ground that the failure to intervene claim fails as a matter of law is denied.

### Qualified Immunity

Defendants contend that they are protected by qualified immunity. Government officials are protected from liability for damages by qualified immunity unless they violate "a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Taylor v. Barkes*, 575 U.S. 822, 825 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)) (internal quotation marks omitted). A right is clearly established if the "right is sufficiently clear that every reasonable officer would have understood that what he is doing violates that right." *Id.* A proper application of qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (internal quotation marks omitted).

The Court has determined above that there are issues of fact regarding whether Knighton was told he was being arrested, and whether his struggles in the cemetery were an effort to breathe or to evade capture. There are also issues of fact regarding when Corporal Hartman arrived at the cemetery and whether she had an opportunity to intercede on Knighton's behalf. The existence of these factual issues precluding summary judgment on the merits also preclude summary judgment on qualified immunity grounds. "The reasonableness of a police officer's conduct is at issue in both a Fourth Amendment excessive force analysis as well as step two of the qualified immunity test." *Benson v. Yaeger*, No. 05-CV-784S, 2009 WL 1584324, at *6

(W.D.N.Y. June 3, 2009). "[T]he Second Circuit has stated that in excessive force cases, the qualified immunity and Fourth Amendment analyses often 'converge on one question: Whether in the particular circumstances faced by the officer, a reasonable officer would believe that the force employed would be lawful.'" *Id.* (internal citation omitted); *see also Cowan ex rel. Estate of Cooper v. Breen*, 352 F.3d 756, 764 n.7 (2d Cir. 2003).

Moreover, using force against a defendant who has not been informed they are under arrest is violation of a clearly established constitutional right. *See Reis v. Bogert*, No. 3:07-CV-00051 JCH, 2008 WL 4642204, at *3 (D. Conn. Oct. 17, 2008) (There is "no lack of clarity in the law" that "[a]n objective officer would not think it reasonable to trip, throw, slam, punch, kick, and taser a suspect without first asking the individual, in any way, to voluntarily submit to arrest.").

It is similarly established that "an officer's significant use of force against an arrestee who was no longer resisting and who posed no threat to the safety of officers or others—whether such force was by pepper spray, taser, or any other similar use of significant force—violates the Fourth Amendment." *Jones*, 963 F.3d at 226. Plaintiff admits that he fled from officers into the cemetery before being tackled. After being tackled, he admits to refusing orders to put his hands behind his back because he was "trying to keep his face out of the puddle so he may breathe." ECF No. 1 ¶ 39. Though "tackling or shoving a plaintiff down to the ground can be an objectively reasonable response to a plaintiff resisting arrest" (*Gutierrez v. New York*, No. 18-CV-3621, 2021 WL 681238, at *15 (E.D.N.Y. Feb. 22, 2021), once Plaintiff was on the ground, if Plaintiff is believed, a reasonable jury could find that he "was not fleeing, nor physically attacking an officer, nor even making a move that an officer could reasonably interpret as threatening an attack." *Brown v. City of New York*, 798 F.3d 94, 102 (2d Cir. 2015) (internal

13

citations omitted). Citing *Brown*, the court in *Cox v. Fischer*, 248 F. Supp. 3d 471, 482 (S.D.N.Y. 2017), held that the use of closed fist punches against an arrestee who refused orders to put his hands on a wall, "absent any physical resistance or attempt to flee, violated clearly established law."

Construing the facts in the light most favorable to the Plaintiff, there are genuine issues of material fact as to whether Defendants violated Plaintiff's clearly established constitutional rights, and whether the use of force against Plaintiff was reasonable under the circumstances. As the Court cannot determine on the current record whether the force used by Officer Sullivan and Sergeant Clark was reasonable, or when Corporal Hartman arrived, the defendants' motion for summary judgment on qualified immunity grounds is denied.

**Equal Protection Claim**

Plaintiff alleges that he was not aware that the defendants were searching for him in connection with the burglary and assumed that his initial stop by Officer Sullivan was the result of racial profiling. He brings this claim under both the Fourteenth Amendment of the United States Constitution and Article first, sections 1 and 20 of the Connecticut Constitution.

Racial profiling claims are analyzed as violations of the Equal Protection Clause. *See Dinkins v. New York*, No. 19-CV-08447(PMH), 2021 WL 3173968, at *10 (S.D.N.Y. July 26, 2021). To establish a claim for racial profiling, Plaintiff must present evidence showing that the Defendants intentionally discriminated against him on the basis of his race. Discriminatory intent can be established by direct evidence or circumstantial or statistical evidence. *See Gilbert v. Newton*, No. 3:13-CV-1715(JCH), 2015 WL 3755955, at *4 (D. Conn. June 15, 2015) (citations omitted).

The undisputed facts, however, show that Plaintiff was stopped because he exactly matched the photograph of the perpetrator taken from the surveillance footage. As the defendants were seeking a specific individual who was African-American, this is not an instance of racial profiling. The defendants' motion for summary judgment is granted as to the federal equal protection/racial profiling claim.

Although the Defendants' do not address Plaintiff's state constitutional claim, there is no private right of action under Article first, sections 1 and 20 of the Connecticut Constitution. *See St. Louis v. Wu*, No. 3:19-cv-320(KAD), 2019 WL 2357566, at *7 (D. Conn. June 4, 2019) (Connecticut courts have repeatedly declined to recognize private right of action under Article first, sections 1 and 20 of the Connecticut Constitution) (citing cases). Any claims under the Connecticut Constitution are dismissed pursuant to 28 U.S.C. § 1915A(b)(1) (court should dismiss at any time complaint that fails to state claim upon which relief may be granted).

**State Law Claims**

Plaintiff asserts state tort claims for assault and battery and intentional infliction of emotional distress. To establish a claim for assault and battery, Plaintiff must show that defendants "applied force or violence to him and that the application of such force or violence was unlawful." *Alston v. Daniels*, No. 3:15-cv-669(CSH), 2015 WL 7257896, at *9 (D. Conn. Nov. 17, 2015) (citations and internal quotation marks omitted). To prevail on a claim for intentional infliction of emotional distress, Plaintiff must establish four elements: "(1) an actor intended to inflict emotional distress or knew or should have known that emotional distress was a likely result of his conduct; (2) the conduct was extreme and outrageous; (3) the conduct caused plaintiff's distress; and (4) the plaintiff's emotional distress was severe." *Id*. at *10 (citation omitted).

Under Connecticut law, extreme and outrageous conduct is defined as "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community," a case in which the facts would cause "an average member of the community… to exclaim, Outrageous!..." *Perez-Dickson v. City of Bridgeport*, 304 Conn. 483, 527 (2012). Resolving all discrepancies in the light most favorable to the non-moving party, a reasonable juror could conclude that an African American defendant being called a "stupid n-word" by a one police officer, while being struck and kicked by two others is "utterly intolerable in a civilized community."

The Court has determined above that there are issues of fact regarding whether the use of force was unlawful. Thus, the Court cannot determine whether summary judgment is warranted on the assault and battery claim. Nor can the Court determine whether the defendants' conduct was extreme and outrageous without resolving issues of fact. The defendants' motion for summary judgment is denied as to the state law claims.

**Conclusion**

Defendants' motions for summary judgment [**ECF Nos. 46, 49**] are **GRANTED** as to the equal protection claims and **DENIED** in all other respects. Any claims for violation of rights under Article first, sections 1 and 20 of the Connecticut Constitution are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1).

**SO ORDERED** at Bridgeport, Connecticut, this 4th day of December, 2023.

                                             */s/ Kari A. Dooley*
                                             KARI A. DOOLEY
                                             UNITED STATES DISTRICT JUDGE